## STURGES v. CLARK D. PEASE, Inc., et al.
No. 275.

Circuit Court of Appeals, Second Circuit.
March 9, 1931.
On Rehearing, April 24, 1931.

Alexander C. Dick, of New York City (Hinckley, Allen, Tillinghast, Phillips & Wheeler, of Providence, R. I., of counsel), for appellant.

Falk & Orleans, of New York City (Samuel Falk, of New York City, of counsel), for appellee Clarke D. Pease, Inc.

Robert E. Hanley, Acting U. S. Atty., of New York City (Harry G. Herman, Asst. U. S. Atty., of New York City, of counsel), for appellee Elting.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This appeal raises the sufficiency of the amended bill of complaint. The amended bill alleges that the complainant purchased a secondhand Hispano-Suiza automobile in Paris, France, for 80,000 francs and attempted to import it into the United States; that it arrived on the steamship Lafayette at New York on May 26, 1930, and bore on it in various places the trade-mark "H–S," owned and registered by the defendant Clarke D. Pease, Inc., a New York corporation; and that a copy of the registration had been filed with the Custom Authorities in New York pursuant to section 141, chapter 3, title 19, of the United States Code (19 USCA § 141)..

Complainant after the arrival of the car at New York made an appraisement entry in the office of the defendant Elting, as collector of the port, and demanded that the car be appraised, the duty fixed, and after payment thereof possession be given to her. This demand was refused by the collector on the ground that under sections 141, 142, and 143 of chapter 3, title 19, of the United States Code (19 USCA §§ 141–143), it was unlawful to import the automobile without written consent of Clarke D. Pease, Inc., because the latter had registered and filed the trade-mark which the car bore. The complainant thereupon requested from Clarke D. Pease, Inc., its written consent to the importation of the automobile for her personal use, and not for resale, but such permission was refused.

Upon the foregoing state of facts the complainant sought a decree directing the collector to deliver the car to her upon payment of lawful duties and enjoining Clarke D. Pease, Inc., from requiring the collector to detain the car by reason of the trade-mark or from in other ways interfering with her use of it.

Two causes of action are set up in the amended bill. The first is based upon the contention that the statute relating to the importation of merchandise of foreign manufacture bearing a trade-mark owned by a citizen of the United States is inapplicable to articles intended only for the personal use of the importer; the second upon the contention that, if the statute in terms covers such articles, it is unconstitutional. The court below dismissed the entire bill, and from its decree this appeal has been taken.

 The statutory provisions which affect the case are contained in title 4 of the Tariff Act of September 21, 1922, and are the following:

"Section 401. When used in this title–

* * *

"(c) *Merchandise.*—The word 'merchandise' means goods, wares, and chattels of every description and includes merchandise the importation of which is prohibited. * * * *" 19 USCA § 231.

"Sec. 526. (a) That it shall be unlawful to import into the United States any merchandise of foreign manufacture if such merchandise, or the label, sign, print, package, wrapper, or receptacle, bears a trade-mark owned by a citizen of, or by a corporation or association created or organized within, the United States, and registered in the Patent Office by a person domiciled in the United States, under the provisions of the Act entitled 'An Act to authorize the registration of trade-marks used in commerce with foreign nations or among the several States or with Indian tribes, and to protect the same,' approved February 20, 1905, as amended, if a copy of the certificate of registration of such trade-mark is filled with the Secretary of the Treasury, in the manner provided in section 27 of such Act, and unless written consent of the owner of such trade-mark is produced at the time of making entry.

"(b) Any such merchandise imported into the United States in violation of the provisions of this section shall be subject to seizure and forfeiture for violation of the customs laws.

"(c) Any person dealing in any such merchandise may be enjoined from dealing therein within the United States or may be required to export or destroy such merchandise or to remove or obliterate such trade-mark and shall be liable for the same damages and profits provided for wrongful use of a trademark, under the provisions of such Act of February 20, 1905, as amended." 19 USCA §§ 141–143.

The main ground on which the appellant rests her contention that these statutory provisions are not applicable to her case is that the Hispano-Suiza automobile which she seeks to import is not "merchandise" within the meaning of sections 141, 142, and 143 of chapter 3, title 19, of the United States Code (19 USCA §§ 141–143). Her counsel begins his argument by saying that the statutory defini-

tion of "merchandise" found in section 231 of chapter 3, title 19, of the Code (19 USCA § 231), is limited to subtitle 4 thereof, and does not define the word when used in sections 141, 142, and 143, which are contained in the prior subtitle 3 governing merchandise of foreign manufacture bearing a trade-mark owned by a citizen or a corporation organized within the United States. This particular argument was induced by the words in section 231 of the Code which limit the definition to the use of the word "merchandise" in that particular subtitle. But as appears from the quotation from section 401 of title 4 of the Tariff Act of September 21, 1922 (19 USCA § 231), the definition of "merchandise" relates to the use of the word wherever found in that title and thus distinctly defines its meaning in section 526 (a) (b) and (c) of the Tariff Act (19 USCA §§ 141–143).

While the act codifying the laws of the United States provides that the Code shall establish "prima facie" the laws of the United States it adds that, "in case of any inconsistency arising through omission or otherwise between the provisions of any section of this Code and the corresponding portion of legislation heretofore enacted effect shall be given for all purposes whatsoever to such enactments." 44 U. S. Stat. Pt. 1, p. 1.

We are therefore confronted at the outset with the provisions of title 4, § 401, of the Tariff Act (19 USCA § 231), which define "merchandise" in the most sweeping terms and state that the word "'means goods, wares and chattels of every description and includes merchandise the importation of which is prohibited." It requires much subtraction from the natural meaning of words to eliminate appellant's car bearing the foreign trade-mark owned by a New York corporation from the term "merchandise" as defined in the Tariff Act.

But it is contended that the word "merchandise" naturally means goods imported for sale and that the statute was directed at goods intended for sale and not at property brought in for personal use and consumption. In this connection it is argued that the drastic statutory provisions in question were only adopted to avoid our decision in A. Bourjois & Co. v. Katzel, 275 F. 539, where we held that the importation and sale in the United States of an article made in a foreign country bearing a foreign trade-mark also owned in this country did not infringe the rights of the owner of the trade-mark in this country. That decision doubtless brought about the legislation by Congress, and, if the reversal of

the decision by the Supreme Court in Bourjois v. Katzel, 260 U. S. 689, 43 S. Ct. 244, 67 L. Ed. 464, 26 A. L. R. 567, had occurred prior to the date of the Tariff Act the provisions in question would not have been enacted at all. Coty, Inc., v. Le Blume Import Co. (D. C.) 292 F. 264, at page 269. But this fact does not settle the scope of the act.

It is of course true that the appellant had a perfect right to buy and import the automobile in question provided the trade-mark was removed; in other words, the statute does not prevent importation of the car itself but only importation of the car when bearing the foreign trade-mark. The object of this drastic statute is to protect the owner of a foreign trade-mark from competition in respect to goods bearing the mark. If such goods can be imported for personal use without his consent, they will be introduced into the country with the risk of ultimate sale. By such a system an opportunity would likewise be afforded for evasive importations when the real object was sale. But, even though importation, as in this case, be for personal use, it is likely that any automobile thus imported will finally be turned in as part payment toward the purchase price of a new car or otherwise. Sales of cars bearing the foreign trade-mark and imported without the consent of Clarke D. Pease, Inc., interfere with its right to control the use of the mark in this country which was the apparent purpose of the congressional legislation.

A mark betokening the origin of a car is an important element in its value, and the American owner of the mark is entitled to have the benefit of such sales as are affected by it. Buyers are likely to purchase Hispano-Suiza cars from Clarke D. Pease, Inc., in order to secure the mark if they cannot otherwise obtain that advantage. If they are allowed to import for personal use without its consent, Clarke D. Pease, Inc., may certainly lose customers who would be willing to buy from them rather than possess cars bearing no trade-mark. To obtain such advantages the local owner of the foreign mark is given control of the importation of all cars bearing it.

The term "merchandise" has been used to cover clothing and other goods imported for personal use, United States v. Chesbrough (D. C.) 176 F. 778; likewise to include opium and intoxicating liquors the sale of which is forbidden, United States v. Sischo, 262 U. S. 165, 43 S. Ct. 511, 67 L. Ed. 925; United States v. 1,250 Cases of Intoxicating Liquors (C. C. A.) 292 F. 486. In tax cases a yacht

used as a pleasure boat, Tobey v. Kip, 214 Mass. 477, 101 N. E. 998, and household furniture, Sullivan v. Inhabitants of Ashfield, 227 Mass. 24, 116 N. E. 565, have been held to come within the term "merchandise" in tax statutes. But decisions construing the meaning of the word "merchandise" are hardly important where the statutory definition is so all-inclusive as the one here.

In view of the foregoing we hold that the appellant's car is "merchandise" within the meaning of the statute.

The contention that the statute if interpreted as above would be unconstitutional is without merit. It has been repeatedly held that Congress may regulate the type of merchandise which is brought into this country and that merchandise legally purchased and used elsewhere may be prohibited from entry and use here. Buttfield v. Stranahan, 192 U. S. 493, 24 S. Ct. 349, 48 L. Ed. 525; The Abby Dodge v. U. S., 223 U. S. 166, 32 S. Ct. 310, 56 L. Ed. 390; Cunard S. S. Co. v. Mellon, 262 U. S. 100, 43 S. Ct. 504, 67 L. Ed. 894, 27 A. L. R. 1306. The question is really one of legislative policy. By the Tariff Act Congress adopted the policy of protecting the American owners of foreign trade-marks by most drastic means. However much we may differ with its policy, the wisdom of the legislation is for the lawmaking body, and we cannot say that the means adopted were unadapted to the end sought to be attained.

The decree is affirmed.

## Upon Petition for Rehearing.

### PER CURIAM.

We affirmed the decision of the District Court dismissing the bill of complaint and holding that complainant's Hispano-Suiza automobile could not be imported for the reason that it bore a foreign trade-mark owned by Clarke D. Pease, Inc., a citizen of the United States, and the written consent of the latter to importation had not been obtained as required by section 526 (a) of title 4 of the Tariff Act of September 21, 1922 (19 USCA § 141).

After our decision, the complainant applied to the collector of the port for permission to remove or obliterate the trade-marks on the merchandise in order thus to obviate the objections to the importation. In making this application, she relied upon section 526 (c), 19 USCA § 143, which provides that the importer may be enjoined from dealing in the merchandise "within the United States or may be required to export or destroy such merchandise or to remove or obliterate such trade-mark. * * *" The collector took the position that the Secretary of the Treasury had ruled that the provisions of section 526 (c) are to be enforced only by a court and are not administrative provisions to be applied by the Secretary of the Treasury, and that the request for permission to remove or obliterate the trade-marks "should have been made to the court." After this ruling the complainant moved for a rehearing of this appeal so that a mandate might issue directing that upon the removal of the trade-marks and the payment of all proper duties and charges, entry of the automobile might be permitted.

On the argument of the appeal, and in complainant's brief, it was not suggested that she desired to have the trade-marks removed or obliterated so that she might be allowed to retain her car. Nor does the bill of complaint ask to have the trade-marks removed or obliterated. The only cause of action of any moment, which is the first, is based upon the claim that the provisions of section 526 of the Tariff Act (19 USCA §§ 141–143), are inapplicable to an automobile which is being imported for the personal use of the owner and not for sale. Complainant does, however, pray in her bill that the collector be ordered to admit the car to entry and to deliver it to her upon payment of customs duties and other lawful charges, and also asks for "such other and further relief as the court may deem proper." This we think is enough as a matter of pleading to justify us in allowing the bill to stand and the cause to go to trial if, under section 526 (c), supra, the complainant has any right to require the car to be admitted to entry on removal or obliteration of the trade-marks.

In answer to complainant's petition for a rehearing, Clarke D. Pease, Inc., says that under section 526 (b), 19 USCA § 142, the car is "subject to seizure and forfeiture for violation of the customs laws," and that it has already been seized by the collector. Clarke D. Pease, Inc., likewise says that the provisions of section 526 (c), 19 USCA § 143, only afford supplementary remedies for the benefit of the trade-mark owner and not of the importer, that the trade-mark is impressed upon so many parts of the automobile that it is impracticable to obliterate it, and that when, as is the case here, the collector has expressed "a willingness to permit the exportation of the car back to the port it came

from the importer is being granted every consideration."

We have no doubt that the car must be regarded as "merchandise imported into the United States" within the meaning of section 526 (b) of the Tariff Act (19 USCA § 142), and that it was such when it arrived within the limits of the port of New York. American Sugar Ref. Co. v. United States, 181 U. S. 610, 21 S. Ct. 830, 45 L. Ed. 1024; Marriott v. Brune, 9 How. 619, 13 L. Ed. 282; United States v. Southmayd, 9 How. page 637, 13 L. Ed. 290. By such importation it became, under section 526 (b), "subject to seizure and forfeiture." But the statute affords certain alternative remedies when no forfeiture is decreed. While the collector may file a libel for forfeiture, yet, where he does not take this drastic step which nothing that has been suggested to us would seem to justify, either an injunction or an order to export or to destroy the car, or to remove the trade-marks therefrom may be granted under section 526 (c), 19 USCA § 143. Both the ruling of the Treasury Department and the fact that the last three remedies follow the clause of section 526 (c) providing for injunctive relief would indicate that the remedies are not administrative, but are intended to be enforced by a court, and that the selection of the appropriate remedy will depend upon the exercise of judicial discretion.

Though the merchandise which has been unlawfully imported is subject to seizure and forfeiture under section 526 (b), 19 USCA § 142, and has been actually seized by the customs authorities, we think that the collector may be required to assert his right to file a libel for forfeiture with promptitude. Any other mode of procedure would render the remedies afforded by section 526 (c), 19 USCA § 143 futile and incapable of efficient enforcement. The situation is analogous to those where claims for taxes have existed against bankrupt estates but no steps have been taken to assert them. In such cases we have required the government to file its claim within a specified period, and, in the event of failure to do this, have ordered the estate administered free from such claim. In re Anderson (C. C. A.) 279 F. 525.

█ It cannot be said that the complainant has no right to have her car admitted to entry upon removal or obliteration of the trade-marks, because this remedy can only be invoked by the owner of the trade-mark. While we do not say that the latter may not invoke it, we do not think this remedy is solely or even primarily for the benefit of such owner. The owner of the trade-mark is amply protected by the clauses of section 526 (c) permitting an injunction against dealing in the prohibited merchandise and providing for exportation and destruction. The clause permitting the merchandise to remain after removal of the trade-mark really benefits the importer alone, and evidently was inserted in the act to ameliorate the situation of the latter when the facts justified its application. It is quite superfluous and useless if the importer can never be heard to say that it ought to be applied. We think complainant should be allowed to invoke the remedy sought, provided that the collector does not insist upon a forfeiture.

█ The collector makes substantially the same contentions as Clarke D. Pease, Inc., but adds that he objects to the burden of seeing that the trade-marks are removed or obliterated. Perhaps he ought not to be under such a burden, but that will depend on the extent of the burden in this particular case and whether removal or obliteration is shown to be reasonable and practicable in the circumstances. Whether the remedy sought should be applied or not is a matter for a court to determine upon proofs, and the trial court is the proper tribunal to conduct the inquiry.

Although this appeal was not argued upon the theory that the appellant was seeking the remedy she now invokes, we think under the prayer for general relief contained in her bill that she should be given the opportunity to pursue the remedy in the District Court.

A mandate will issue reversing the decree, remanding the case, and providing (1) that the collector shall have thirty days within which to file a libel of forfeiture, and that, if he files such libel, the cause shall stand over to await the outcome; and (2) likewise providing that, in case no libel is filed within the foregoing period, the court shall hear proof and determine whether complainant's car shall be exported or destroyed, or, after removal or obliteration of the trade-marks thereon and the payments of customs duties and other proper charges, shall be admitted to entry.